IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRITTANY MORROW and EMILY MORROW, Minors, In Their Own Right, And By Their Parents and Natural Guardians, BRADLEY MORROW And DEIRDRE MORROW, and BRADLEY MORROW AND DEIRDRE MORROW, Individually, | )<br>)<br>)   Civil Action No. 10-292<br>)<br>)   Chief Magistrate Judge Lenihan<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) |
| v. | )<br>) |
| BARRY J. BALASKI, Individually, and THE BLACKHAWK SCHOOL DISTRICT, | )<br>)   Re: ECF No. 24<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION

Presently before the Court is the Motion to Dismiss (ECF. No. 24) filed by Defendants Barry J. Balaski ("Balaski") and the Blackhawk School District ("School District") (collectively "Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiffs Brittany Morrow ("Plaintiff Brittany") and Emily Morrow ("Plaintiff Emily") (collectively "Minor Plaintiffs"), minors, in their own right, and by their parents and natural guardians, Bradley Morrow and Deirdre Morrow, and Bradley and Deirdre Morrow, individually, filed this civil action pursuant to 42 U.S.C. § 1983, alleging a Fourteenth Amendment substantive due process violation pursuant to the state created danger theory of liability, and special relationship theory. Plaintiffs also include a supplemental state law claim against Balaski for "negligence and/or gross and willful misconduct."

The Court scheduled oral argument on Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint; the parties argued the motion on January 11, 2011. Thereafter, Plaintiffs filed a "Letter" with the Court on January 12, 2011, which the Court construed as a Motion to file a Third Amended Complaint. The Court granted the Motion to Amend, and Plaintiffs timely filed their Third Amended Complaint (ECF No. 23). Defendants then filed the Motion to Dismiss Plaintiffs' Third Amended Complaint presently before the Court (ECF No. 24).[1] For the reasons that follow, Defendants' Motion to Dismiss at ECF No. 24 will be granted and Plaintiffs' Third Amended Complaint will be dismissed with prejudice.

THE THIRD AMENDED COMPLAINT

The following averments are taken from Plaintiffs' Third Amended Complaint at ECF No. 23 and are deemed true for purposes of the pending motion to dismiss.

Minor Plaintiffs were students in good standing at the School District and were members of the 9th and 10th grades. Beginning on January 4, 2008, Minor Plaintiffs began to be subjected to a series of threats, acts of racial intimidation, and physical assaults and attacks by a fellow student of the School District, Shaquana Anderson ("Anderson"). Specifically, on January 5, 2008, Anderson threatened Plaintiff Brittany with bodily harm by the use of the telephone and a MySpace blog published by Anderson. Thereafter, Anderson again threatened Plaintiff Brittany with bodily harm by calling and leaving a message on Plaintiff Brittany's home answering machine. Plaintiff Emily was also threatened at this time by Anderson.

On January 7, 2008, Anderson physically attacked Plaintiff Brittany in the lunch room of the School District. As a result of a "No Tolerance Policy" at the School District, both Plaintiff

---

[1] When granting the Motion to Amend on January 19, 2011, the Court ordered that the responsive pleading to the Third Amended Complaint (which could include a second motion to dismiss), was due on February 15, 2011. The Court further ordered that in the event Defendants file a second motion to dismiss, Plaintiffs' Response would be due on March 1, 2011. Although Defendants timely filed their Motion to Dismiss, Plaintiffs have failed to file a Response. Consequently, the Court considers Defendants' Motion without benefit of Plaintiffs' Response.

Brittany and Anderson were suspended by Defendant Balaski, assistant principal of the School District, for three (3) days. Anderson's conduct was reported to the local police by Plaintiff Deirdre Morrow on Balaski's recommendation. On this date, Anderson was charged by the Chippewa Township Police Department with simple assault. Thereafter, on January 9, 2008, Anderson was charged by the White Township Police Department with terroristic threats and harassment. Following her three (3) day suspension, Anderson was permitted by Defendants to return to school. Anderson was not expelled.

On January 29, 2008, Anderson attacked Plaintiff Brittany in the high school during the school day by throwing or attempting to throw her down a set of steps. In addition, Anderson called Plaintiff Brittany a "cracker," "retarded," told Plaintiff Brittany that she "had better learn to fight back," and stated "why don't you learn to talk right."

On April 9, 2008, Anderson was placed on probation by the Court of Common Pleas of Beaver County, Juvenile Division, and among other things, was ordered to have no contact, direct or indirect, with Plaintiff Brittany. A copy of the Court Order was provided to the School District and to Assistant Principal Balaski. Thereafter, Anderson was permitted to remain in school where she continued to have contact with Plaintiff Brittany.

On September 9, 2008, Anderson was adjudicated delinquent by a Juvenile Master of the Court of Common Pleas of Beaver County based on the simple assault charge filed by the Chippewa Township Police Department, and was ordered to have no contact, direct or indirect, with Plaintiff Brittany. A copy of this Court Order was provided to the School District and to Assistant Principal Balaski.

Plaintiffs state that at this time, the School District had in effect a Disciplinary Code that prohibits "[e]ngaging in conduct prohibited by the Criminal Code of the Commonwealth of

Pennsylvania on school grounds or at school activities." Plaintiffs further aver that the Disciplinary Code indicates that "[t]hese acts are clearly criminal in nature and are so serious that they always require administrative action resulting in the immediate removal from school." (Third Amended Complaint, ECF No. 23 at ¶ 16.)  Plaintiffs further aver that the "Defendants acted to allow Anderson to remain in school following her conviction of a crime in violation of the Disciplinary Code."  (Third Amended Complaint, ECF No. 23 at ¶ 17.)

On September 12, 2008, Anderson was permitted by the School District to board Minor Plaintiffs' school bus, although this bus did not service Anderson's home route.  Anderson threatened to attack Plaintiff Brittany on the bus.  Later that same evening, Anderson attacked Plaintiff Brittany by elbowing her in the throat while at a School District football game.

On September 16, 2008, Abbey Harris, Anderson's friend, struck Plaintiff Emily Morrow in the throat; this attack was reported to Defendants.

Thereafter, Plaintiff parents met with the School District and Balaski, who informed Plaintiff parents that the School District "could not guarantee the safety" of their daughters, and further advised Plaintiff parents that they should "consider another school" for Minor Plaintiffs. (Third Amended Complaint, ECF No. 23 at ¶ 20.)  In October 2008, Bradley and Deirdre Morrow removed their daughters from the Blackhawk School District and enrolled them in another school.

LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993).  A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 556

(2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 129 S. Ct.1937, 1949 (May 18, 2009) (citing *Twombly,* 550 U.S. at 555-57).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949 (citing *Twombly,* 550 U.S. at 556).  The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly*, 550 U.S. at 556-57).

Recently, in *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit discussed its decision in *Phillips v. County of Allegheny,* 515 F.3d 224, 232-33 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and described how the Rule 12(b)(6) standard had changed in light of *Twombly* and *Iqbal* as follows:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S. Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler*, 578 F.3d at 210.

Thereafter, in light of *Iqbal*, the *Fowler* court set forth a two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal*, 129 S. Ct. at 1949].  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234-35.  As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'- 'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler,* 578 F.3d at 210-11.

In support of their Motion to Dismiss the Third Amended Complaint, Defendants argue the following: 1) Plaintiffs' claims pursuant to the special relationship/custody theory must fail as a matter of law because the relationship between a student and school district is not a custodial one; 2) Plaintiffs' claims pursuant to the state-created danger theory must fail as a matter of law because the state cannot be liable for a failure to act, even if it has actual knowledge of a danger. Further, the Defendants argue that the law in the Third Circuit provides that a school district's and/or its principal's failure or refusal to discipline, transfer or expel students who pose a danger to another does not constitute an affirmative act under the state-created danger theory; 3) Plaintiffs have failed to state a claim for municipal liability; 4) Defendant Balaski is entitled to qualified immunity; and 5) Plaintiffs' state negligence claim is barred by the defense of official

immunity pursuant to 42 Pa. C.S. § 8550; and any state claim of "gross and willful misconduct" is unsupported by factual averments supporting a plausible claim for relief.

Plaintiffs filed no responsive brief.

ANALYSIS

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ..

42 U.S.C. § 1983. To state a claim for relief under this provision, the Plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

STATE-CREATED DANGER

In *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189 (1989), the United States Supreme Court noted that generally, the Due Process Clause of the Fourteenth Amendment to the United States Constitution does not impose an affirmative duty upon the state

7

to protect citizens from the acts of private persons. *Id*. at 198-200. In *DeShaney*, the United States Supreme Court rejected the claim of a boy and his mother that local officials, who had repeatedly attempted to ensure the boy's safety from his abusive father, were liable under the "special relationship" theory when the boy remained in his father's custody and was so badly beaten that the boy suffered severe brain damage. *Id*. at 195-96. In rejecting plaintiffs' claim pursuant to the "special relationship" theory, the Court stated that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Id*. at 199-200. The Court continued its analysis with the following dicta that provided the foundation for the "state-created danger" theory of liability:

> While the State may have been aware of the dangers Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them. That the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter. Under these circumstances, the State had no constitutional duty to protect Joshua.

*Id*. at 201.

In *Kneipp*, the United States Court of Appeals for the Third Circuit relied on the above language in *DeShaney* to recognize that a plaintiff alleging a substantive due process violation pursuant to 42 U.S.C. § 1983 could proceed in accordance with a "state-created danger" theory where a state does play a part in the creation of the dangers faced by a private person, or where through its actions, the state renders the individual more vulnerable to them. *Kneipp*, 95 F.3d

1199, 1205, 1211 (3d Cir. 1996). In order to prevail on a state created danger claim, a plaintiff must prove the following:

> 1) the harm ultimately caused was foreseeable and fairly direct;
>
> 2) a state actor acted with a degree of culpability that shocks the conscience;
>
> 3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> 4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Sanford v. Stiles*, 456 F.3d 298, 304-05 (3d Cir. 2006) (quoting *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006) (internal quotation marks and footnotes omitted)). All four elements must be satisfied to state a claim. *Id*.

Here, Plaintiffs are unable to establish the fourth factor of the state-created danger theory as a matter of law. Although Plaintiffs amended their complaint in an effort to allege affirmative acts by Defendants, Plaintiffs' Third Amended Complaint includes no facts that indicate how the Defendants affirmatively used their authority to create a danger to Minor Plaintiffs or that rendered them more vulnerable to danger than had the Defendants not acted at all. Instead, Plaintiffs' Third Amended Complaint repeatedly complains of Defendants' omissions in not expelling Anderson or otherwise protecting Minor Plaintiffs, even though Defendants were aware of the state court order directed to Anderson. The United States Court of Appeals for the Third Circuit has discussed the difficulty that is sometimes attendant to determining whether circumstances constitute an act or an omission as follows:

> We do not want to pretend that the line between action and inaction, between inflicting and failing to prevent the infliction of harm, is clearer than it is.  If the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into the snake pit.

*D.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364, 1374 (3d Cir. 1992).

Here, the creation of the danger alleged by Plaintiffs was the failure of the Defendants to utilize their authority to expel Anderson.  While the Court is sympathetic to Plaintiffs' plight, they have not stated a cause of action under current Third Circuit case law, which the Court is bound to follow. Plaintiffs have identified no action of the Defendants that utilized their authority in a way than rendered Minor Plaintiffs more vulnerable than they would have been otherwise.  *See Bright v. Westmoreland County,* 443 F.3d 276, 282 (3d Cir. 2006) (It is misuse of state's authority rather than failure to use it that may violate due process.).  The Defendants' awareness of the state court order directed to Anderson does not create an affirmative duty to protect Minor Plaintiffs.  *Bennett v. Philadelphia*, 499 F.3d 281, 288 (3d Cir. 2007) (quoting *Bright*, 443 F.3d at 284) ("[N]o affirmative duty to protect arises from the State's knowledge of the individual's predicament.") (internal quotation marks omitted).  *See also Brown v. School Dist. of Philadelphia*, Civil Action No. 08-2787, 2010 WL 2991741 at *8 (E.D. Pa. July 28, 2010) ("School District's failure to discipline, transfer or expel student violators is not a state created danger.").

Consequently, Defendants' Motion to Dismiss Plaintiffs' state-created danger claim must be granted.

SPECIAL RELATIONSHIP THEORY

Generally, as discussed above, the Due Process Clause does not impose an affirmative duty on the state to protect individuals from harms caused by private citizens.  *See DeShaney v.*

10

*Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 198-200 (1989). The United States Court of Appeals for the Third Circuit has recognized two exceptions to this general rule. The first exception, as discussed at length above, concerns the situation when a "state-created danger" is involved. The second exception where the state has a duty to protect or care for individuals from the acts of private citizens arises when a "special relationship" exists. The "special relationship" theory is a very limited one that requires a custodial relationship in the nature of incarceration or institutionalization.[2] *Torisky v. Schweiker*, 446 F.3d 438, 444-45 (3d Cir. 2006). The United States Court of Appeals for the Third Circuit has repeatedly stated that no special relationship exists between school children and the state because parents decide where to send their children to school, children remain residents of their parents' home, and children are not physically restrained from leaving school during the school day. *Stanford v. Stiles*, 456 F.3d 298, 304 n.4 (3d Cir. 2006) (discussing *D.R*, 972 F.2d at 1371-73 (holding that no special relationship exists between school children and the state)); *Black v. Indiana Area School Dist.*, 985 F.2d 707, 713 (3d Cir. 1993). *See also Bailey v. School Dist. of Philadelphia*, 2008 WL 343088 *2 (E.D. Pa., Feb. 7, 2008). This legal analysis remains unchanged even though Defendants were aware that a state court had ordered Anderson to have no contact with the Minor Plaintiffs: public schools remain open institutions, and at the end of the day, children return home, and can request assistance from their caregivers who are unrelated to the state. *See D.R.*, 972 F.2d at 1371-73.

---

[2]
> The state's duty to prisoners and involuntarily committed patients exists because of the full time severe and continuous state restriction of liberty in both environments. Institutionalized persons are wholly depend[e]nt upon the state for food, shelter, clothing and safety. It is not within their power to provide for themselves, nor are they given the opportunity to seek outside help to meet their basic needs. Obviously, they are not free to leave.

*D.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364, 1371 (3d Cir. 1992).

Therefore, Defendants' Motion to Dismiss Plaintiffs' Fourteenth Amendment Due Process claim pursuant to the special relationship theory must be granted.

### MUNICIPAL LIABILITY AND QUALIFIED IMMUNITY

Because the Plaintiffs' constitutional claims must be dismissed with prejudice, the Court need not reach the issues of municipal liability and qualified immunity.

### STATE LAW CLAIMS

28 U.S.C. § 1367(c) provides that the district courts may refuse to exercise its supplemental jurisdiction when a district court has dismissed all claims over which it has original jurisdiction.  Consequently, because the Court will grant Defendants' Motion to Dismiss the § 1983 claims over which the Court has original jurisdiction pursuant to 28 U.S.C. § 1331, the Court declines to exercise its supplemental jurisdiction over Plaintiffs' state law claims for "negligence and/or gross and willful misconduct."

### CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss at ECF No. 24 will be granted, and Plaintiffs' Third Amended Complaint at ECF No. 23 will be dismissed with prejudice.  An appropriate order will follow.

Dated: March 16, 2011

By the Court:

_____
Lisa Pupo Lenihan
Chief United States Magistrate Judge